United States Court of Appeals,

Fifth Circuit.

No. 92-3759.

Keith David ELLIOTT, Plaintiff-Appellant,

v.

Bruce N. LYNN, Secretary, Louisiana Department of Corrections, Defendant-Appellee.

Nov. 17, 1994.

Appeal from the United States District Court for the Middle District of Louisiana.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from an institution-wide "shakedown" of the Louisiana State Penitentiary, ordered by the defendant Bruce N. Lynn, secretary of the Louisiana Department of Corrections, because of an increasing number of murders, suicides, stabbings, and cuttings among the inmate population. Under Lynn's order, the plaintiff, David Keith Elliott, along with all other prisoners, submitted to a visual body cavity search at the prison. The search was conducted in the general presence of other inmates, several guards, and three other bystanders. Following this search, Elliott filed suit pursuant to 42 U.S.C. § 1983 against Lynn. The United States District Court for the Middle District of Louisiana granted Lynn's motion for summary judgment and dismissed Elliott's complaint. The court held that the search did not violate Elliott's Fourth Amendment right to be free from unreasonable search and seizure, nor did it deprive Elliott of a state created

1

liberty interest without due process of law.

Elliott appeals the dismissal of his complaint, contending that the search violated his Fourth and Fourteenth Amendment rights under the United States Constitution. He also contends that Lynn is not entitled to the protection provided by qualified immunity.[1]

I

During the period immediately preceding June 9, 1989, an extraordinary number of murders, suicides, stabbings, and cuttings occurred within the Louisiana State Penitentiary. These circumstances created an emergency situation, and the defendant Lynn ordered an institution-wide shakedown on June 9, 1989. All 3,164 prisoners, including Elliott, were subjected to a visual body cavity search over a period of two and one-half days. To facilitate this massive search effort, Lynn brought in additional correctional officers.

Elliott, along with all the members of his prison camp, were gathered for inspection in one area of the camp's dormitory. The prisoners were searched in groups of five or six with one officer visually searching each inmate, while the other fifty-five members of the camp were present and awaited their inspections. Several non-searching officers also were present in the room for safety purposes, along with the defendant Lynn. Two news media personnel and the airplane pilot for Lynn stood in a wide walkway-hall that

---

[1]Lynn included in his motion for summary judgment a claim of qualified immunity. Although the district court did not consider qualified immunity in its judgment, the parties include this issue for review on appeal.

opened into the large room and, if interested, could have observed the strip search.

Ten days following this institution-wide shakedown, a district court judge declared the Louisiana State Penitentiary a state of emergency relying on facts submitted to the judge prior to the strip search.

Elliott filed this suit against Lynn in the United States District Court for the Middle District of Louisiana pursuant to 42 U.S.C. § 1983. After considering the parties' motion and cross-motion for summary judgment, the district court denied Elliott's motion, granted Lynn's motion and dismissed the complaint with prejudice.[2] The court held that the search did not violate Elliott's Fourth Amendment rights because the institution-wide search was a legitimate means to regain control, discipline, and security within the prison. The court further determined that although the search could have been conducted with more privacy, the correctional officers were not required to use the least restrictive means in performing the search. Finally, the court found that although the regulation defining a visual body cavity search created a protected liberty interest under the Fourteenth Amendment, Elliott was not deprived of liberty without due process of law because adequate post-deprivation remedies were available to

---

[2]The district court referred the motions to a magistrate judge who issued a report recommending that summary judgment be granted in favor of Lynn. The district court granted Lynn's motion for the reasons set forth in the magistrate judge's report. Accordingly, we will refer to the district court's opinion in this case, as the recommendation of the magistrate judge.

protect Elliott's rights of due process.

On appeal, Elliott argues that (1) the search was conducted in such a place and manner that his privacy rights under the Fourth Amendment were violated;  (2) state prison regulations created a liberty interest that restricted body cavity searches and this search deprived him of his protected liberty interest without due process in violation of the Fourteenth Amendment;  and (3) Lynn is not entitled to the protection provided by qualified immunity.

## II

We review a grant of summary judgment *de novo,* applying the same standard used by the district court.  *Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1412 (5th Cir.1993). Under Rule 56(c) of the Federal Rules of Civil Procedure, we examine evidence presented to determine that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986);  *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994).  We must review "the facts drawing all inferences most favorable to the party opposing the motion."  *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

## A

Elliott contends that the strip search violated his rights

under the Fourth Amendment to be free from unreasonable searches. However, Elliott substantially narrows our review by conceding that the scope and justification for the search were not unreasonable. Consequently, the focus of our inquiry is whether the manner and the place of the strip search were unreasonable under Fourth Amendment standards. In essence, Elliott argues that there were three areas—a gameroom, a bathroom, and a television room—a few feet from the location of the actual search where individual searches could have been conducted with substantially more privacy and minimal inconvenience. Thus, he contends that the search was constitutionally unreasonable because it was unnecessarily conducted *en mass* in a non-private area and in the presence of non-essential personnel.

B

A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs. *United States v. Lilly,* 576 F.2d 1240, 1244 (5th Cir.1978). The Fourth Amendment, however, requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed."[3] *Lilly,* 576 F.2d at 1244. Because a prison

---

[3]We have noted in *Valencia v. Wiggins,* 981 F.2d 1440, 1443-44 (5th Cir.1993) and *Brothers,* 28 F.3d at 457, that the Fourth Amendment's application in the prison context has been significantly limited by the Supreme Court in *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). *Hudson* held only that prisoners have no justified expectation of privacy in their prison cells. *Hudson,* 468 U.S. at 526, 104

administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden. *Id.* at 1245.

Under appropriate circumstances, visual body cavity searches of prisoners can be constitutionally reasonable. *See Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell,* 441 U.S. at 559, 99 S.Ct. at 1884. We have interpreted this statement of reasonableness as striking a balance "in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner." *Watt v. City of Richardson Police Dep't.,* 849 F.2d 195, 196 (5th Cir.1988).

We are required, as a matter of both common sense and law, to accord prison administrators great deference and flexibility in carrying out their responsibilities to the public and to the

---

S.Ct. at 3200. Furthermore, *Brothers* simply held that the Fourth Amendment does not apply to the seizure of prisoners through an official's use of excessive force. *Brothers,* 28 F.3d at 457. No Supreme Court case has overruled the holding of *Lilly* that the Fourth Amendment applies to body cavity searches of prisoners. Thus, *Lilly* is still the law of this circuit concerning the Fourth Amendment's application to visual body cavity searches in the prison setting. *See also Albright v. Oliver,* --- U.S. ----, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (suggesting Fourth Amendment has some applicability in prison context).

6

inmates under their control, including deference to the authorities' determination of the "reasonableness of the scope, the manner, the place and the justification for a particular policy." *Hay v. Waldron,* 834 F.2d 481, 486 (5th Cir.1987). Furthermore, we have found that when evaluating the security policies adopted by the prison administrators, the court is not required to apply a "least restrictive means" test. *Hay,* 834 F.2d at 485.

We now turn to consider the conditions at the Louisiana State Penitentiary on June 9, 1989.

C

The emergency situation created by an increasing number of prison murders, suicides, stabbings, and cuttings clearly justified, as conceded by Elliott, an immediate search of the inmates to seize the weapons of this violence, as well as other contraband, in order to restore and maintain security. Because this crisis required immediate action and because of the large number of inmates involved in the institution-wide shakedown, Lynn was fully justified in conducting the strip search in the most time-efficient place and manner available. Lynn decided that under these emergency circumstances the search must be conducted on a collective, as opposed to an individual basis. Elliott argues that Lynn overlooked alternative methods and places to conduct the search that would have been less intrusive on his privacy rights. He argues that individual searches in nearby, smaller, more private areas would have protected the privacy and personal dignity of the prisoners. These considerations, he argues, were completely

7

ignored by the authorities conducting the search. As Lynn explained, however, individual searches of the prisoners in private areas in the dormitory, with one guard performing the search plus one additional guard present for security purposes, would have been extremely time consuming, especially considering the additional time needed for the inmate to undress and redress. This lengthy process, when applied to more than 3,000 individuals, would have defeated the purpose of the swift institution-wide shakedown, by allowing the inmates a greater opportunity to hide or dispose of weapons and contraband and by prolonging the violence.

Furthermore, the presence of additional guards was clearly appropriate because of the method of the search, the expediency demanded by the circumstances, and the urgency of safety concerns. Although the record reflects that Lynn's pilot and the two news media personnel could have observed the search from the walkway that opened into the large room, the record does not reflect that they demonstrated any interest in viewing the searches. Furthermore, the room in which the search was conducted was the only one large enough to conduct the collective search. As the commanding officer, the justification of Lynn's presence cannot be questioned. Thus, on the record before us, we defer to Lynn's sound judgment regarding all aspects of the search and will not apply the benefit of hindsight to question the secondary details of this search. Indeed, even with the benefit of hindsight, his decisions seem appropriate under the exigent circumstances that faced him. Although it is certainly true that the privacy of the

8

prisoners was compromised, we hold that the search was constitutionally reasonable in the context of prisoner's rights under the Fourth Amendment.[4]

### III

In sum, we AFFIRM the district court's judgment finding that the institution-wide visual body cavity search in the place and manner conducted did not violate the Fourth or Fourteenth Amendments to the United States Constitution. For the foregoing reasons, the judgment of the district court dismissing Elliott's complaint is

AFFIRMED.

GARWOOD, Circuit Judge, concurring specially:

I would hold that the Eighth Amendment, not the Fourth

---

[4]Elliott argues that Louisiana Department of Public Safety and Corrections Regulation 30-25 creates a protected liberty interest relating to limitations on body cavity searches because it contains an exclusive listing of the situations when such searches may be conducted. Because a search pursuant to emergency circumstances, such as the one in this case, is not contained in this exclusive list, Elliott contends that the search deprived him of liberty without due process of law. Despite Elliott's argument to be free from such a search, we need not decide whether the language of the regulation is sufficiently mandatory to create a protected liberty interest. *See Kentucky Dep't. of Corrections v. Thompson,* 490 U.S. 454, 464 n. 4, 109 S.Ct. 1904, 1910 n. 4, 104 L.Ed.2d 506 (1989) (finding protected liberty interest exists if statute contains mandatory language requiring application of certain substantive predicates before reaching desired result). Elliott concedes that Lynn had a right to suspend the regulation in an emergency, which includes the alleged mandatory language contained in the regulation that Elliott relies upon for creation of his liberty interest. We hold that because Lynn effectively suspended the regulation prior to the search, any liberty interest that might have otherwise existed is not implicated.

Finally, disposing of this case on the merits renders moot any further issues concerning qualified immunity.

Amendment, is the standard by which a prison inmate's protection against searches by prison authorities is to be measured. In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court stated:

> "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527, 104 S.Ct. at 3201 (footnote omitted).
>
> "Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs.... The Eighth Amendment always stands as a protection against "cruel and unusual punishments.' " *Id.* at 529, 104 S.Ct. at 3202.

The majority would restrict *Hudson* to searches of prison cells. That was the setting in which *Hudson* arose, but its language is not so limited. Nor is it logical to fracture the Fourth Amendment in this bizarre manner, so that convicted inmates' protection against certain prison searches is measured by the Fourth Amendment while their protection against other such searches is measured by the Eighth Amendment. *See also Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Eighth Amendment applied to inmate shot in quelling of prison riot); *Brothers v. Klevenhagen,* 28 F.3d 452, 457 (5th Cir.1984) (Fourth Amendment inapplicable to seizure claim of pre-trial detainee); *Valencia v. Wiggins,* 981 F.2d 1440, 1443-45 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993) (same).

I recognize that our decision in *United States v. Lilly,* 576

F.2d 1240 (5th Cir.1978), held that the Fourth Amendment constrains prison officials in their body cavity searches of inmates. *Lilly,* however, has been superseded by *Hudson,* which locates the constraint on prison inmate searches within the Eighth Amendment.[1]

For reasons not significantly different from those given by the majority in upholding this search under the Fourth Amendment, I conclude that it did not violate Elliott's rights under the Eighth Amendment.

Accordingly, I join in the judgment of affirmance, but would rest that determination on the Eighth Amendment, not the Fourth.[2]

---

[1]The majority also cites *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Albright v. Oliver,* --- U.S. ----, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). As pointed out in *Brothers* at 456 n. 3, 457, neither decision supports application of the Fourth Amendment here. Fourth Amendment applicability was expressly assumed *arguendo* only in *Bell. Id.* at 557, 99 S.Ct. at 1884. The dicta in the *Albright* plurality opinion merely says "The Framers considered the matter of *pretrial* deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at ----, 114 S.Ct. at 813 (emphasis added). *Albright* does not address conduct in jail after booking, much less in prison after conviction.

[2]I join in the majority's discussion and resolution of the procedural due process claim.