David SKUNDOR, Plaintiff,

v.

Thomas McBRIDE, et al., Defendants.

No. CIV.A. 5:02–0205.

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 10, 2003.

David Skundor, pro se, for Plaintiff.

Charles Houdyschell, Jr., Esq., Heather A. Connolly, Esq., Office of Attorney General, Assistant Attorney General, Charleston, for Defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending are 1) the motion of Plaintiff David Skundor (Skundor) to dismiss the Complaint against Defendant Michael Coleman; 2) motion of Defendants Thomas McBride and Robert Daniel to deny class certification; 3) Plaintiff's motion for judgment on the pleadings; and 4) Defendants' motion for summary judgment. This *pro se* action was referred to Magistrate Judge R. Clarke VanDervort who has submitted his Proposed Findings and Recommendation (PF & R) pursuant to 28 U.S.C. § 636(b)(1)(B). Following an extension of time granted by the Court, Plaintiff timely submitted objections to the PF & R.

The Court reviews *de novo* those portions of the PF & R to which Plaintiff objects. Plaintiff's objections lie only against the Magistrate Judge's resolution of Defendants' motion for summary judgment. Accordingly, the Court accepts and adopts those portions of the PF & R concerning motions 1) to 3). Plaintiff's motion to dismiss the Complaint against Defendant Michael Coleman is **GRANTED**; the motion of Defendants McBride and Daniel to deny class certification is **GRANTED**; and Plaintiff's motion for judgment on the pleadings is **DENIED**.

Skundor objects the Magistrate Judge erred in weighing the evidence at summary judgment stage, failed to consider the *Turner v. Safley*[1] reasonableness factors, deferred excessively to prison officials, relied on case law that is distinguishable, misstated the Eighth Amendment standard, and mistakenly relied on Skundor's inability to cite a time when he was observed by females during a visual body cavity (VBC) search. Skundor also objects the Magistrate Judge misapprehended certain facts concerning the VBC searches about which he complains, facts that go to their reasonableness under the Fourth Amendment and whether the searches wantonly inflict pain and humiliation under the Eighth Amendment. In particular, Plaintiff objects to findings in the PF & R 1) that the routine recreation yard VBC searches are an efficient way of processing so many inmates through recreation, 2) that the view of inmates being searched is blocked to some extent by male correctional officers who stand in front of the entrance way and the frame and hardware of the doorway, and 3) that VBC searches are justified before or after solitary recreation. Finally, Skundor suggests in-cell searches, behind-the-back-cuffing, and use of a handheld metal detector are alternatives that would protect his right to be free from unreasonable searches and wanton infliction of humiliation and/or pain. The Court first considers the summary judgment standard when applied to a claim of qualified immunity and then examines Skundor's further objections *seriatim.*

The qualified immunity analysis proceeds in two steps. The first question is whether, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show [Defendants'] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The second question is whether the right alleged to have been violated was a "clearly established ... right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("Qualified immunity is not lost when an officer violates the Fourth Amendment unless a reasonable officer would know that the specific conduct at issue was impermissible."). Only if both inquiries are resolved in the affirmative should a denial of qualified immunity be upheld.

In *Wilson v. Kittoe,* 337 F.3d 392 (4th Cir.2003), our Court of Appeals examined the situation where the summary judgment standard is applied to a claim of qualified immunity. The court explained:

A defendant is entitled to summary judgment on grounds of qualified immunity when there is no genuine issue of material fact, and when the undisputed facts establish that the defendant is entitled to judgment as a matter of law. *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir.1992). We have emphasized the importance of resolving the question of qualified immunity at the summary judgment stage rather than at trial. *Id.* at 313; see also *Saucier,* 533 U.S. at 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 ("Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." (internal quotation marks omitted)). However, we have also recognized that the qualified immunity question can be difficult for a court to resolve as a matter of law, as it can at times require "factual determinations respecting disputed aspects of [a defendant's] conduct." *Pritchett,* 973 F.2d at

---

1. 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

312. The importance of summary judgment in qualified immunity cases "does not mean ... that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." *Id.* at 313.

*Id.*, 337 F.3d at 397.

The ordinary operation of the summary judgment doctrine does not, however, preclude the Court from all factual determinations. The Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient.

*Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. While the Court must not weigh the evidence at summary judgment to reach a verdict, *see id.* at 248, 106 S.Ct. 2505, the Court must evaluate the evidence and determine whether there is a genuine question of material fact. *Id.*

The Magistrate Judge analyzed the evidentiary questions as to both genuineness and materiality as *Rule* 56(c) requires. Fed.R.Civ.P. 56(c). This is apparent when the specific issues raised by Skundor are examined. An efficient review may be gained by applying the four factor *Turner v. Safley* test. *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although the Magistrate Judge did not use the test as an organizing principle, each element is discussed fully in his analysis.[2]

The *Turner* court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[3] Four factors are

---

**2.** The Magistrate Judge instead correctly applied the *Bell v. Wolfish* test, which is more appropriate to the specific question whether VBC searches violate the Fourth Amendment. *See id.*, 441 U.S. 520, 545–46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Skundor's objection the PF & R failed to employ the *Turner* test is correct, but has no legal effect.

**3.** The Supreme Court noted:

In our view, such a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.

*Id.* (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S., at 128, 97 S.Ct., at 2539.)

As this passage makes clear, Skundor is mistaken to question the Magistrate Judge's

deference to prison administration. The Supreme Court elsewhere explained:

"Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Whitley v. Albers*, 475 U.S. 312, 321–22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Bell*, 441 U.S. at 547, 99 S.Ct. 1861). The Magistrate Judge's deference to prison officials' judgment about these matters is entirely appropriate.

relevant in determining reasonableness: 1) whether there is a valid rational connection between the prison regulation and the legitimate governmental interest offered to justify it; 2) whether alternative means of exercising the right exist that remain open to inmates; (3) the likely impact that accommodation of the alleged constitutional right would have on the guards, other inmates, and the allocation of prison resources; and 4) the absence of ready alternatives. *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

The VBC searches are performed when prisoners leave the recreation area where they have been allowed to mingle with up to fifteen (15) other prisoners. Prison officials note Skundor is incarcerated in the Quilliams II unit, a segregation unit that houses the most dangerous inmates at the Mount Olive Correctional Center (MOCC). Skundor is currently housed there for fighting. Prison officials identify as a chief security concern the movement of inmates, and particularly any contact of staff with prisoners after the prisoners have been alone in their cells or mixing with other inmates. Despite the fact that inmates are strip searched before leaving their cells for the recreation yard, prison officials produced as evidence pictures of weapons found on the recreation yard of Quilliams II. Prison officials reason that the search to which Skundor objects is necessary to assure the safety of staff when prisoners leave the yard, where there is a potential for the exchange of weapons. Prison officials also seek to prevent the exchange of contraband such as drugs, but they emphasize staff safety requires the searches before prisoners are escorted back to their cells. Clearly, there is a rational relation between the regulation and the legitimate concern of staff safety.

The second factor considers whether alternative means of exercising the right remain open to inmates. Prison officials assert prisoners' privacy is guarded by using only male staff, stationing staff performing the search between the inmate and anyone else who might view him, and by the construction of the doorway, which partially blocks a view. According to prison officials, to block the view further would unduly obstruct the staff's view of the recreation yard, creating blind spots preventing staff from observing inmate movement. Skundor responds to these representations by claiming the recreation yard searches are "conducted in the most visually accessible areas in Quilliams II." (Objs. at 5.) Plaintiff's disagreement, without more, is insufficient to raise a question of material fact. That is particularly true where it is obvious that, absent the protections prison officials now observe, the searches would be substantially more public.

The third consideration is the likely impact accommodation of Skundor's claimed right to be free of the VBC searches after recreation would have on guards, other inmates, and the allocation of prison resources. Prison officials explain that two staff members escort each inmate. Quilliams II houses 96 prisoners who receive recreation one hour per day for at least five days per week. No more than fifteen inmates take recreation at one time. Simply searching and moving inmates to recreation, observing them, then searching and moving inmates back to their cells is obviously a labor intensive activity, even without the attendant potential danger and the precautions that must be taken. While less labor might be required if the searches were not performed, prison officials have decided the searches are necessary, with safety taking precedence over potential efficiencies.

Skundor believes recreation yard VBC searches are inefficient because more in-

mates can be searched at one time in-cell. However, prison officials believe it is important to search inmates before they leave the recreation yard and are handcuffed. To that end, the sally port location with attendant privacy protections, is an efficient way to steadily process the large number of inmates seeking recreation, as the Magistrate Judge observed.

Finally, under *Turner*, the Court considers the absence of ready alternatives. Skundor proposes in-cell searches, behind-the-back cuffing, and handheld metal detectors. The prison officials are concerned to search the inmates before they leave the recreation yard and are cuffed. That concern is the basis, and a reasonable basis, for the procedure used now. Also, metal detectors would not detect non-metallic contraband. Thus, Skundor's proposals are not readily available alternatives to the recreation yard searches.

As noted above, the Magistrate Judge examined whether the searches were reasonable under the *Bell v. Wolfish* standard. *Id.,* 441 U.S. 520, 545–46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(VBC searches do not violate the Fourth Amendment if the searches are reasonable and not motivated by punitive intent). "Reasonableness" is determined by balancing the need for the search against the invasion of personal rights, considering the scope of the intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted. Applying this test required weighing the same issues as the *Turner* test as well as additional considerations specific to VBC searches, and determining whether Skundor raised a genuine issue of material fact about any of them. The Magistrate Judge correctly found he did not. (PF & R, 21–29.)

With regard to strip searches on an inmate who has been in the recreation yard alone, the Magistrate Judge notes they are performed in more privacy than searches when other inmates are present. There is still the danger that an inmate may have managed to smuggle contraband or a weapon into the recreation yard, in view of the uncontroverted fact of the number of weapons missed on the initial in-cell search and later recovered from the yard. As the Magistrate Judge aptly noted: "this may appear to be a belt and suspenders approach to administering institutional security and safety [but courts] have made it quite clear that they will not interfere with policies and practices adopted in prison administration in the interest of institutional security and safety." (PF & R at 29.)

Skundor argues certain cases relied upon are distinguishable. In *Elliott v. Lynn,* 38 F.3d 188 (5th Cir.1994), strip searches of prisoners in the presence of other inmates and staff were found not to be constitutionally defective, especially in light of legitimate security concerns. (PF & R at 25.) Skundor points out that in *Elliott* the searches were performed during a state of emergency, a situation not present on the recreation yard. The *Elliott* court applied the *Bell v. Wolfish* test to the VBC searches. *Id.* 38 F.3d at 191. The emergency situation was indeed a consideration, however, ultimately the *Elliott* court relied on all four factors, as the Magistrate Judge did here. Particularly, the court deferred to the prison administrators:

We are required, as a matter of both common sense and law, to accord prison administrators great deference and flexibility in carrying out their responsibilities to the public and to the inmates under their control, including deference to the authorities' determination of the "reasonableness of the scope, the man-

ner, the place and the justification for a particular policy."

*Id.* (quoting *Hay v. Waldron,* 834 F.2d 481, 486 (5th Cir.1987)). Additionally, in this case the extremely dangerous nature of the sequestered inmates on this special unit provides added penological considerations similar to the emergency conditions in *Elliott.*

Skundor argues *Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988) is distinguishable because the strip searches there were conducted in a non-private hallway because safety concerns did not permit in-cell searches. In fact, *Michenfelder* is similar on this point because safety concerns, as discussed above, support the reasonableness of searches at the recreation yard before prisoners are returned to their cells.

With regard to his Eighth Amendment claim, Skundor contends the PF & R mistakenly relied on the lack of physical consequences to determine there was no constitutional violation. (Objs. at 13–14 (citing PF & R at 29).) Skundor overlooks the remainder of the Magistrate Judge's discussion, which takes into account contemporary standards of decency, potential humiliation, and attendant unpleasantness. (*See* PF & R at 23–24, 26–30.)

Similarly, in objecting that the Magistrate Judge relied on Plaintiff's failure to cite a specific time when a strip search of Plaintiff at the recreation yard was observed by a female, Skundor overlooks substantial additional discussion concerning the use of male staff for such searches, (PF & R at 9), the direction to professional staff not to travel by the search cage or port, *id.,* the extensive consideration of case law on point, *id.* at 26, and the finding that such viewing, if it occurs, is purely incidental and *de minimis, id.* at 27.

Having considered each of Skundor's objections to the Magistrate Judge's thorough examination of these issues in the PF & R, the Court **FINDS** and **CONCLUDES** the objections are without merit. The Magistrate Judge correctly concluded Skundor failed to raise questions of material fact sufficient to present the question to a jury whether his rights under the Fourth and Eighth Amendments were violated.

Accordingly, the Court adopts and incorporates the PF & R. Defendants' motion for summary judgment is **GRANTED** and this case is **DISMISSED** and stricken from the Court's docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to the named parties, counsel of record and Magistrate Judge VanDervort. Both this Memorandum Opinion and Order and the Magistrate Judge's PF & R are published on the Court's website at http://www.wvsd.uscourts.gov.

### *JUDGMENT ORDER*

In accordance with the Memorandum Opinion and Order entered this day, the Court **GRANTS** judgment in favor of Defendant and **ORDERS** the case be **DISMISSED** with prejudice and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Judgment Order to the named parties and counsel of record.