# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 16-30037

———————

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2017

Lyle W. Cayce
Clerk

FREDDIE R. LEWIS,

      Plaintiff–Appellant,

v.

SECRETARY OF PUBLIC SAFETY AND CORRECTIONS; JACK GARNER; TIMOTHY WILKINSON; JAY TIM MORGAN; CORRECTION CORPORATION OF AMERICA SECURITY MILLIE;  CORRECTION CORPORATION OF AMERICA SECURITY SAWYER; CORRECTION CORPORATION OF AMERICA SECURITY JOHNSON; SERGEANT FLOWERS; CORRECTION CORPORATION OF AMERICA SECURITY MAC; VIRGIL LUCAS; CORRECTION CORPORATION OF AMERICA; WINN CORRECTIONAL CENTER; MRS.  MELTON; THEODORE JOHNSON; CAROL MELTON;

      Defendants–Appellees.

———————

Appeal from the United States District Court
for the Western District of Louisiana

———————

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Freddie R. Lewis brought suit under 42 U.S.C. § 1983 alleging he was subjected to unconstitutional strip searches while incarcerated at the Winn Correctional Center (WCC) in Winnfield, Louisiana.  The defendants, the Secretary of the Louisiana Department of Public Safety and Corrections

No. 16-30037

(LaDPSC), Corrections Corporation of America (CCA), the President of CCA, WCC, the former warden of WCC, the current warden of WCC, a number of correctional and security officers, and the former security chief of WCC, moved for summary judgment. The federal district court granted summary judgment for the defendants. We affirm.

## I

While incarcerated at WCC, Lewis worked at the WCC Garment Factory owned and operated by the Louisiana Department of Corrections. The Garment Factory produces clothes and linens available for purchase by other correctional facilities in Louisiana. The building contains sewing machines, cutting tables, needles, scissors, clippers, nails, electrical cords, and other items and machines. The cutting room and the tool room are partially secluded, and inmates are able to check out tools by placing their identification card on the nail from which they took a certain tool. A culinary arts class and a carpentry class for inmates are held in the same building.

The Garment Factory is next to a sally-port, through which supply trucks and civilian drivers enter. Although the drivers interact with inmates while the trucks are unloaded, they are not searched when they enter the sally-port. Trustee inmates, who are permitted to leave the prison and reenter through the sally-port, also interact with the inmates working at the Garment Factory.

The inmates working at the Garment Factory are subject to strip searches at least twice a day, once before they reenter the main prison for lunch and again before returning to the main prison at the end of the day. Inmates are also subject to a strip search if a head count of the inmates at the prison, which occurs several times each day, does not match the total number of inmates assigned to the facility. When the count does not match, every inmate must be quickly returned to his bed for a "bed count."

No. 16-30037

The strip searches are conducted in a partially secluded room in the Garment Factory in groups of approximately ten inmates. The room has windows next to the entry and exit doors for security reasons. Female corrections officers are not allowed in the search room. After entering the room, inmates are instructed to disrobe and place their clothes on two long, narrow tables in the middle of the room. Corrections officers then search the clothes. The inmates are also instructed to spread their buttocks, lift their genitals, and open their mouths for visual searches. The procedure was altered at some point such that inmates were instructed to squat and cough, rather than spread their buttocks and lift their genitals. Inmates are not physically touched by the officers during this search. After the search, the inmates partially dress in the search room, exit, and complete dressing outside the room. They then walk through a metal detector one at a time. The metal detector sometimes fails to detect small amounts of metal.

Two Louisiana Department of Corrections employees managed the Garment Factory and two WCC correctional officers, Carol Melton and Joshua Clark, provided security during the relevant period. While searches were conducted, Melton would remain in the hallway to ensure inmates did not attempt to re-enter the Garment Factory. The instructors for the Culinary Arts class and the Carpentry class, both male, received annual training on strip search procedures and assisted in the searches. Clark stated in his affidavit that he has personally found contraband during these searches, including marijuana, clothes stolen from the Garment Factory, cell phones, and money. He also stated that metal shanks have been discovered in the Garment Factory. The WCC Warden stated that the metal rods used to hold spools of thread on the Garment Factory sewing machines were found in the main prison, sharpened into shanks.

3

No. 16-30037

Lewis brought suit under § 1983, alleging that the defendants violated his Fourth Amendment rights by subjecting him to strip searches.  He also alleged that LaDPSC failed to monitor CCA, the private contractor that runs WCC, adequately and that LaDPSC and CCA both failed to comply with their own rules and regulations.  Lewis sought injunctive relief and punitive damages.  After his complaint was filed, Lewis was transferred from WCC to participate in a work release program.  The district court then denied and dismissed as moot his claim for injunctive relief because he was no longer housed at WCC.[1]    It also dismissed Lewis's claims based on the defendants' failure to follow state policy because failure of state officials to follow a particular policy does not give rise to federal constitutional claims.[2]   The district court ordered service of process on Lewis's remaining Fourth Amendment claim.  Lewis did not appeal this judgment.

The district court subsequently dismissed the complaint against three of the individual defendants because they were not served and did not make a general appearance in the case.  The remaining defendants moved for summary judgment, and the district court granted that motion.  Lewis appealed.

## II

We review a grant of summary judgment de novo, using the same standard employed by the district court.[3]     "The Fourth

---

[1] *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief relating to environmental conditions at the original unit moot).

[2] *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (recognizing that "[o]ur case law is clear . . . that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met").

[3] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

Amendment . . . requires that 'searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed.'"[4]   "When reviewing the reasonableness of searches, this court strikes a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'"[5]   "We 'defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security.'"[6]

Controlling the flow of contraband and ensuring institutional security are legitimate penological objectives.[7]   The affidavits of WCC prison officials show that the search policies at issue were aimed at preventing the flow of contraband from the outside truck drivers and others to inmates in the Garment Factory and to the main prison.  The search policies were also used to prevent the removal of items from the Garment Factory that could be used as weapons.  Lewis has failed to rebut this reasonable justification for the strip and visual body cavity searches and has therefore not shown that the district court erred in granting summary judgment in favor of the defendants.

---

[4] *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (quoting *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978)).

[5] *McCreary v. Richardson*, 738 F.3d 651, 656-57 (5th Cir. 2013) (per curiam) (quoting *Elliott*, 38 F.3d at 191).

[6] *Id.* at 657 (quoting *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 322-23 (2012)).

[7] *Bell v. Wolfish*, 441 U.S. 520, 559-62 (1979); *McCreary*, 738 F.3d at 656 ("Prison practices that impinge on prisoners' constitutional rights are valid as long as they are 'reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))).

No. 16-30037

The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights[8] and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.[9]  The district court did not err in granting summary judgment as to these claims.

Lewis raises a variety of discovery issues in his briefing before this court. Lewis contends that the defendants failed to produce discovery material he requested that would establish a material fact sufficient to survive summary judgment.  Lewis describes his discovery requests as, among others, requests for documentation of LaDPSC's and CCA's failure to comply with the terms of their contract, records demonstrating that Lewis was incarcerated at LaDPSC, records showing LaDPSC's legal authority to transport Lewis, evidence of authorization from the Louisiana legislature for CCA to operate the Garment Factory with LaDPSC employees, the blueprint of WCC showing that the Garment Factory is part of the WCC compound, and the reports of the strip searches required under prison policy.  We conclude that even if the defendants failed to produce this requested material, none of the discovery urged by Lewis could create an issue of material fact precluding summary judgment for the defendants.[10]

Finally, Lewis appeals the district court's dismissal of his complaint against three of the defendants under Federal Rule of Civil Procedure 4(m).

---

[8] *See Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'" (quoting *Brown v. Texas A&M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986))).

[9] *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam).

[10] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

No. 16-30037

Our review of this claim is for abuse of discretion.[11]    Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure.[12]    After the defendants refused service of process primarily because Lewis failed to include first names on the summonses, the district court ordered defendants to provide the full names of those individuals.  The defendants complied.  Lewis has not presented any argument asserting good cause for his failure to serve the defendants properly thereafter.[13]    The district court's dismissal of the complaint against these three defendants was not an abuse of discretion.[14]

**\*    \*    \***

The district court's judgment is AFFIRMED.

---

[11] *Lindsey v. United States R.R. Ret. Bd.*, 101 F.3d 444, 445 (5th Cir. 1996).

[12] FED. R. CIV. P. 4(m).

[13] *Sys. Sign Supplies v. United States Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam) ("When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service.").

[14] *See id.* at 1013-14 (noting that "[p]ro se status does not excuse a litigant's complete failure to effect service" and that even though defendants had actual notice, the district court did not abuse its discretion in dismissing the suit).

7