# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2020

Lyle W. Cayce
Clerk

No. 19-30154

Desmond C. Parker,

*Plaintiff—Appellant*,

*versus*

O. Woods, Deputy; Doctor Nguyen; Correct Care
Solutions, L.L.C.; Shontrell Cooper; D. Tapp, Deputy;
D. Harris, Deputy,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-1609

Before Stewart, Duncan, and Wilson, *Circuit Judges*.
Per Curiam:*

Desmond C. Parker, a Louisiana state inmate, filed a *pro se* and *in forma pauperis* federal lawsuit under 42 U.S.C. § 1983 against several defendants, alleging various abuses that occurred during his pretrial

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-30154

detention and later imprisonment. The district court granted summary judgment dismissing all of Parker's claims. We AFFIRM.

## I.

Parker's claims arose from three separate incidents. He alleges that during his pretrial detention, he was denied adequate medical care for a fractured ankle and that his personal property, including legal papers, was lost. In addition, Parker alleges his rights were violated during a strip and visual body cavity search that took place in jail following his conviction.[1] Parker named as defendants Sheriff Marlin N. Gusman; Correct Care Solutions, LLC ("CCS"); Dr. Xuong Nguyen, who treated his ankle injury; Deputy Octave Woods, who performed the strip search; Deputies Daniel Tapp and Deshaune Harris, who were both present during the strip search; and Shontrell Cooper, a grievance clerk at the facility where Parker was incarcerated.

Adopting the magistrate judge's report, the district court dismissed the claims against CCS and Dr. Nguyen, concluding Parker's allegations of deficient care did not state a constitutional violation. It dismissed Parker's intentional deprivation of property claim without prejudice, pointing out that Louisiana provides an adequate post-deprivation remedy. *See DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).[2] The court also granted summary judgment to Cooper,

---

[1] Parker also alleged that he and another inmate were deprived of water and access to a bathroom while in a holding cell. Parker does not mention this claim on appeal and has therefore abandoned it. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 637 F.3d 604, 610 (5th Cir. 2011).

[2] The court noted that, to the extent Parker alleged a negligent deprivation of his property, this claim was not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).

the grievance clerk, finding no evidence she was personally involved in providing Parker medical care. Finally, the court concluded Deputy Woods' search of Parker did not violate the Constitution and therefore dismissed the claims against Deputies Woods, Tapp, and Harris.

Because the only colorable issue before us concerns the strip and body cavity search, we provide additional detail on that claim. The incident took place at the Orleans Justice Center, where Parker was housed. When a syringe went missing from the jail nurse's medical cart, officers conducted a "shakedown" or systematic search of all inmates. Deputy Woods searched Parker in a shower area, while only Deputies Tapp and Harris were present. After undressing, Parker was initially asked to squat and cough. When that procedure did not appear to work, however, Parker claims Deputy Woods pushed him over a chair and manually spread Parker's buttocks. Parker jumped away and asserted Deputy Woods could not touch him in that manner. Parker stated that all the deputies laughed, and that Deputy Woods "was staring at [Parker's] penis and smiling."

The district court ruled the search did not violate the Constitution. It began by explaining it was uncontested that Deputy Woods was permitted to search Parker because the officers had legitimate security interests in finding the missing syringe. The court thus construed Parker's claim as turning on how Deputy Woods searched him, specifically by: (1) touching Parker's buttocks and (2) staring at his genitalia and smiling. While noting that "body cavity searches are normally conducted only visually with the prisoner manipulating his own body parts," the court reasoned the mere fact that this search involved physical contact did not transform it into a *per se* constitutional violation. Relying on Eighth Amendment precedents, the court also stated that "fleeting and isolated" or "*de minimis*" touching would not violate the constitution even if "clearly inappropriate and sexual in nature." For similar reasons, the court held that Deputy Woods's "lesser

action" of smiling at Parker's genitalia was also not actionable "even if . . . intended to humiliate [Parker]." The court therefore granted summary judgment to Deputy Woods. Given the claims against Deputies Tapp and Harris turned on their alleged failure to protect Parker from Deputy Woods's unconstitutional actions, those claims were dismissed as frivolous. Parker timely appealed.

## II.

We review a summary judgment *de novo. Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018). Summary judgment is appropriate if there is "no genuine dispute as to any material fact," FED. R. CIV. P. 56(a), but cannot stand if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Parker asks for reversal, not only as to his strip-search claim but also as to his claims concerning medical care and lost property. We need not pause long over the latter two claims. As to those, Parker makes no colorable argument that the district court erred in granting summary judgment. Accordingly, we summarily affirm the judgment as to those claims. *See* 5TH CIR. R. 47.6. Only one issue merits further inspection: whether the district court erred by granting summary judgment on the strip-search claim to Deputy Wood (and, so, also to Deputies Tapp and Harris). The court's conclusion was correct but its analysis needs adjustment.

In analyzing Parker's strip-search claim, the court blended distinct Fourth and Eighth Amendment frameworks. The court began, properly, by assessing the reasonableness of the search, but then proceeded to evaluate whether the unwelcome contact was "*de minimis*," citing cases addressing the Eighth Amendment. For instance, the court relied on *Copeland v. Nunan*,

No. 00-20063, 2001 WL 274738, at *2–3 (5th Cir. Feb. 21, 2001) (unpublished), involving a prisoner's Eighth Amendment claim that he had been fondled by a prison pharmacist. Our opinion distinguished "violent sexual assaults involving more than *de minimis* force[,which] are actionable under the Eighth Amendment," from claims involving "isolated, unwanted touchings by prison officials," which may be "despicable" but nonetheless not actionable under the Eighth Amendment. *Id.* at *3 (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1195, 1197 (9th Cir. 2000); *Boddie v. Schneider*, 105 F.3d 857, 860–61 (2d Cir. 1997)). We recognize that Parker's *pro se* complaint characterizes the strip-search as a sexual assault. On a liberal reading, however, we take Parker to allege an unreasonable search that sounds under the Fourth Amendment, which provides the proper analysis under our precedent for challenges to prison searches. *See, e.g., Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999) (citing *Elliott v. Lynn*, 38 F.3d 188, 191 n.3 (5th Cir. 1994)); *see also Elliot*, 38 F.3d at 190–91 (evaluating constitutionality of a "visual body cavity search[]" under the Fourth Amendment) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

"The Fourth Amendment . . . requires that 'searches or seizures conducted on prisoners must be reasonable under all facts and circumstances in which they are performed.'" *Elliott*, 38 F.3d at 191 (quoting *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978)). Courts "must balance the need for the particular search against the invasion of the prisoner's personal rights caused by the search . . . consider[ing] the 'scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Moore*, 168 F.3d at 237 (quoting *Bell*, 441 U.S. at 559). Proving the reasonableness of an inmate search, however, imposes only a "light burden" on prison officials, "[b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts." *Elliot*, 38 F.3d at 191 (citing *Lilly*, 576 F.2d

at 1245); *see also Hay v. Waldron*, 834 F.2d 481, 486 (5th Cir. 1987) (courts "ordinarily should defer" to prison officials, "[i]f a policy is reasonably related to legitimate security objectives and there is no substantial evidence to indicate that prison officials have exaggerated their response to security considerations"). Ultimately, courts must "strik[e] a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'" *Elliot*, 38 F.3d at 191 (quoting *Watt v. City of Richardson Police Dep't*, 849 F.3d 195, 196 (5th Cir. 1988)).

This is not the first time our court has applied these Fourth Amendment principles to the kind of search at issue here. "Under appropriate circumstances," we have explained, "visual body cavity searches of prisoners can be constitutionally acceptable." *Id.* (citing *Bell*, 441 U.S. at 558)). We have considered factors such as whether the search was performed by guards of the opposite sex[3]; whether it occurred in public or private[4]; and whether it was unreasonably lengthy.[5] Further, the Supreme Court has advised that there "may be legitimate concerns about the invasiveness of searches that involve the touching of detainees." *Florence v. Bd. of Chosen*

---

[3] *Compare Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (concluding the presence of female guards during a strip search does not render the search *per se* unconstitutional), *with Moore*, 168 F.3d at 237 (holding a female guard's strip and body cavity search of a male prisoner absent an emergency and when male officers were available could violate the Fourth Amendment).

[4] *See Elliott*, 38 F.3d at 189 (holding visual body cavity searches conducted *en masse* in non-private area were justified by an emergency situation created by increasing murders, violence, and the corresponding need to uncover and seize hidden weapons).

[5] *See McCreary v. Richardson*, 738 F.3d 651, 659 (5th Cir. 2013) (stating the unnecessary length of a search "gives us pause," but was not "clearly unlawful" for qualified immunity purposes)

*Freeholders of Cnty. of Burlington*, 566 U.S. 318, 339 (2012).[6] Following *Florence*, some circuits have distinguished purely visual searches from those that involve varying degrees of physical touching or intrusion.[7]

Considering these principles, we find no error in the district court's conclusion that the search here was reasonable. We note at the outset that Parker does not contest that the search was justified by the prison's need to find the missing syringe. There is little doubt that it was. The Supreme Court has squarely recognized that prison officials have a "serious responsibility" to make sure inmates do not conceal such potentially lethal items on, or in, their bodies. *Florence*, 566 U.S. at 332; *see also id.* ("Correctional officers have had to confront arrestees concealing knives, scissors, razor blades, glass shards, and other prohibited items on their person, including in their body cavities."); *Bell*, 441 U.S. at 559 (observing that "[a] detention facility is a unique place fraught with serious security dangers," including "[s]muggling

---

[6] The Supreme Court in *Florence* upheld the constitutionality of a prison's policy of visually searching detainees during the intake process but emphasized that the searches at issue did not "include any touching of unclothed areas by the inspecting officer." 566 U.S. at 325.

[7] *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1234 n.28 (10th Cir. 2020) (distinguishing an officer's touching of an inmate's beard during an initial pat-down frisk from "the far-more-invasive touching of a detainee's unclothed body as part of a strip search, especially as part of an inspection of body-cavities"); *Brown v. Polk Cnty.*, 965 F.3d 534, 541 (7th Cir. 2020) (characterizing body cavity search involving physical contact as "an intrusion of privacy to the highest degree"); *United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015) (distinguishing between "visual cavity searches that do not require physical entry into a prisoner's body" and "physical cavity searches"); *Williams v. City of Cleveland*, 771 F.3d 945, 953 (6th Cir. 2014) (distinguishing *Florence* because "[p]ublic exposure of the genitalia accompanied by physical touching is far more intrusive than directing an arrestee to remove her clothing in private for the purpose of 'visually inspecting'") (citation omitted); *Cantley v. W. Va. Reg'l Jail and Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (officers entitled to qualified immunity from Fourth Amendment claim when inmates were searched in a private room with one officer of the same sex and the officer did not touch either plaintiff).

of money, drugs, weapons, and other contraband . . . by concealing them in body cavities"). Furthermore, Parker's search was conducted in private and by an officer of the same sex. No officers of the opposite sex were present. *Cf. Moore*, 168 F.3d at 237. Moreover, nothing suggests that the search was unduly lengthy. Parker himself does not dispute that the search lasted for only about three minutes.

All we are left with, then, is Parker's reliance on evidence that Deputy Woods manually spread his buttocks and "smiled" at his exposed genitals. We cannot conclude that this evidence, standing alone, raises a material dispute as to whether the search was unreasonable. Even viewing the evidence most favorably to Parker, the touching involved was incident to a legitimate body cavity search. And, as explained, the search was a valid means of finding potentially lethal contraband that had gone missing. Parker himself does not contest the need for the search and does not argue the search was unduly prolonged. *See, e.g., Moore*, 168 F.3d at 237 (in evaluating reasonableness of prisoner search, courts "'must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted'") (quoting *Bell*, 441 U.S. at 559). Given the "great deference and flexibility" courts must afford prison officials in maintaining institutional security, *Elliot*, 38 F.3d at 191, we cannot say that the physical touching involved here renders the search unconstitutional.

Nor do we find a material dispute as to whether the search was conducted in a "humiliating and degrading manner." *Id*. An instructive comparison comes from our decision in *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007) (per curiam), in which we held the plaintiff's Fourth Amendment claim arising out of a prison search was not frivolous. *Id*. at 196. There, an officer performed a search by ordering an inmate to remove his clothing and then to "step back, lift one leg up, hop on one foot, switch legs

and go in the opposite direction for a total distance of about thirty feet," all in view of other prisoners and a female guard. *Id.* at 195. The plaintiff also alleged the officer was "wearing a 'lewd smile.'" *Id.* Parker's search is nothing like the one in *Hutchins*. While the *Hutchins* search was arguably conducted in a manner calculated to humiliate the inmate in public and in view of other prisoners and a guard of the opposite sex, the search here was brief and performed in private by a guard of the same sex. Evidence that one guard "smiled" at Parker's penis does not rise to the level of a "humiliating and degrading" search actionable under the Fourth Amendment. *Elliott*, 38 F.3d at 191 (citation omitted).

We therefore affirm the summary judgment as to Deputy Woods, and by necessary extension, as to Deputies Tapp and Harris.

**\* \* \***

The judgment of the district court is AFFIRMED.