IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-21035
Summary Calendar

_____


RANDLE COOKE,

Plaintiff-Appellant,

versus

TAMMY NEALY,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
USDC No. H-96-CV-3361

_____
December 16, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

I

Randle Cooke, Texas state prisoner # 578761, proceeding pro se
and in forma pauperis (IFP), filed a civil rights complaint against
Tammy Nealy, a correctional officer at the Jester III Unit of the
Texas Department of Criminal Justice-Institutional Division
(TDCJ-ID), alleging claims of retaliation, denial of access to
courts, verbal abuse, and denial of his constitutional right of
freedom of association.  Cooke also filed a more definite statement

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of facts.  Cooke alleged that on September 21, 1996, Officer Nealy conducted a search or "shakedown" of his cell and ordered that he be subjected to a strip search by Officer Kevin Ray.  He alleged that the search was conducted in retaliation for his having filed a grievance against Nealy.  During the search of his cell, Nealy allegedly confiscated various legal materials and damaged his word processor.  As a result of the confiscation of his legal materials, including notes, affidavits, and complaints, he was prevented from filing complaints in either case, one against Nealy alleging due process violations and another against other defendants, including a physician, alleging an Eighth Amendment violation.

Nealy is alleged to have subjected him to profane, derogatory, and racially discriminatory comments.  He alleged that while she searched his cell on September 21, 1996, she referred to the grievance he had filed against her and stated, among other things, that she "was going to fix [him]."  Nealy told other inmates not to associate with him in violation of his right to freedom of association.  Nealy told him several times that because he was a "snitch," she was going to "get" him.  On September 21, 1996, Nealy stated that his complaints would never make it to court and that she would get him "locked up" and would "tear [his] house up every chance [she] [got]."

Nealy filed an answer to the complaint, arguing, among other things, that Cooke had failed to state a claim upon which relief could be granted. Cooke filed a motion to amend his original complaint, requesting that in the light of Nealy's purported intentional damage to his word processor, that she be required to repair it.

Nealy filed a motion for summary judgment. Cooke responded, submitting in support statements from other inmates in which the inmates averred, among other things, that the they observed Nealy remove legal papers from Cooke's "legal box"; that the inmates heard Nealy make racial slurs and threats against Cooke, stating that she would get back at him for filing something on her; that the inmates saw Nealy kick Cooke's typewriter; and that Nealy had a reputation for disliking white inmates.

The district court conducted a Spears[1] hearing and, for the reasons stated orally at that hearing, dismissed Cooke's claims with prejudice under 28 U.S.C. § 1915(e)(2) for failure to state a claim and as frivolous. At the Spears hearing, Cooke testified that searches of inmates' cells were fairly routine. Supp. R., 2-3. Before September 21, 1996, he had never been subjected to strip search. Id. at 3. On January 20, 1997, he again was

---

[1]Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

3

subjected to another strip search; Nealy was involved in this second strip search also. Id.

He testified that during the search of his cell, his original complaint in a 42 U.S.C. § 1981 racial discrimination suit against Nealy was confiscated as well as staff and inmate affidavits. He was unable to commence the lawsuit because many of the affiants had left the unit. He testified that the legal materials from a § 1983 deliberate indifference suit he planned to file against Dr. Largen and Warden Decker also were confiscated. The materials included "I-60's," responses, and § 1983 forms. He had no lawsuits pending at the time of the September 21, 1996 search and had filed no lawsuits, other than this one, since the search.

During the search, Nealy kicked his word processor, causing the letter "C" to stop working.

Cooke acknowledged that following the search he received a reprimand for having more than the authorized amount of bed linens, an extra towel, in his cell. He received five days' commissary restriction for the infraction.

Cooke had not previously filed a lawsuit against Nealy but on May 8, 1996, he filed a grievance against her for making racial slurs against him. Cooke testified that he overheard Nealy order Officer Kevin Ray to conduct the strip search.

Major Tedford of the TDCJ testified that TDCJ procedures allow for random searches, including strip searches. David Handorf, the grievance supervisor in the region, testified that he had reviewed Cooke's grievance regarding the incident and the response to that grievance. The response indicated that after Nealy observed Cooke and another inmate making an exchange, the supervisor was called and a strip search conducted. Nealy denied using profanity toward Cooke or making any statements concerning his previous grievances. She reported that she did not confiscate his legal papers or kick his word processor. Cooke's grievance indicated that some of his legal papers were confiscated, but the warden's response indicated that the officers and staff did not confiscate any legal papers.

After hearing the testimony, the court determined that Cooke's retaliation claim rested on a speculative connection between his May 1996 grievance against Nealy and the September 1996 search. The court noted that Nealy did not conduct the strip search and that the search of Cooke's cell was a routine matter. The court observed that Cooke conceded that he had more bed linens than authorized and that Cooke's failure to dispute his guilt on the disciplinary charge further eroded his retaliation claim. The court stated that Cooke had not shown that his right of access to courts had been hindered in a constitutionally significant manner or that he was without recourse as to his personal property losses.

The court stated that even assuming Cooke's allegations of verbal abuse were true, an inmate had no constitutional right to be free from verbal abuse.

Cooke filed a timely notice of appeal. Cooke has paid the appellate filing fee.

## II

### A

Cooke argues that the district court erred in dismissing his claims as frivolous and for failure to state a claim. This court reviews a dismissal under § 1915(e)(2)(B)(ii) de novo, applying the same standard used to review a dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Black v. Warren, 134 F.3d 732, 734 (5th Cir. 1998). We accept as true all the allegations of the plaintiff's complaint. Ashe v. Corley, 992 F.2d 540, 544 (5th Cir. 1993). The dismissal may be upheld only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 160 (5th Cir. 1995).

Cooke argues that Nealy told him on several occasions that she was going to retaliate against him. He asserts that he submitted five affidavits of witnesses who observed Nealy take his legal pleadings and threaten him with retaliation. Cooke argues that the district court's determination that his retaliation claim rested on

a speculative connection between events widely separated in time is contradicted by the evidence that included the affidavits.

He argues that Nealy ordered Ray to conduct the strip search and that she was present and observed the search. He contends that although Nealy did not conduct the strip search, did not "physically put her hands on [him]," she participated in it. He argues that the search of his cell was not routine because during a routine search, officers do not go through the contents of the inmates' locker and "legal box." He contests the district court's conclusion that he was not without recourse as to his personal property losses, citing the testimony of Tedford that suggested that it would be difficult to fix Cooke's word processor.

Cooke also argues that the two witnesses who testified for Nealy at the Spears hearing were not Jester Unit employees and lacked first-hand knowledge of the incident.

Although, as the district court noted, months separated Cooke's filing the grievance against Nealy and the search of Cooke's cell and strip search, Cooke offered direct evidence of a retaliatory motive through his own testimony and the statements of other inmates. Although it is undisputed that searches in the prison were "routine," Cooke's allegations suggested that the search of September 21 was not one of these routine searches. Cooke alleged that Nealy directly indicated that she was conducting

7

the search in retaliation for his filing a grievance against her; that legal materials were confiscated during the search; and that Nealy kicked his word processor during the search. These allegations are supported by the statements of other inmates. Cooke stated a valid nonfrivolous retaliation claim. The district court's dismissal of Cooke's claim thus is VACATED as to this claim and the case is REMANDED for further proceedings.

B

Cooke argues that the district court erred in dismissing his denial of access to courts claim. He argues that during the search of his cell, Nealy confiscated his legal materials, preventing him from pursuing two civil rights actions.

Prisoners have a constitutionally protected right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). A prisoner must show an actual injury to prevail on a denial of access to courts claim. Lewis v. Casey, 518 U.S. 343, 349-51 (1996). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993) (footnote omitted).

The district court, in dismissing this claim, stated only that Cooke had not shown that his right of access to courts had been

hindered in a constitutionally significant manner. In the district court, however, Cooke alleged that during the search of his cell, Nealy confiscated various documents pertaining to § 1981 and § 1983 civil rights lawsuits he was preparing; this allegation was supported by the statements of other inmates. Cooke alleged that as a result of the confiscation of the legal materials, he was unable to file a complaint. He alleged that some of the confiscated documents included affidavits of persons no longer available to provide statements on his behalf. Cooke has stated a nonfrivolous denial of access to courts claim. Therefore, the district court erred in dismissing this claim as well, and the judgment as to this claim also is VACATED and REMANDED.

C

On appeal, Cooke mentions that he alleged in the district court that Nealy violated his constitutional right of freedom of association. Cooke has not adequately briefed this claim, however, and he wholly has failed to brief the claim addressed by the district court of Nealy's purported verbal abuse. Although pro se briefs are afforded a liberal construction, even pro se litigants must brief arguments in order to preserve them. Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993). "A party who inadequately briefs an issue is considered to have abandoned the claim." Green v. State Bar of Texas, 27 F.3d 1083, 1089 (5th Cir. 1994). Cooke

has abandoned these two issues by failing to brief them on appeal.[2]
Thus, the district court's judgment, to the extent that it dismissed Cooke's claim of verbal abuse explicitly and Cooke's claim of a denial of his right of freedom of association implicitly, is AFFIRMED.

III

For the reasons set out above, the judgment of the district court is

> AFFIRMED in part; VACATED in part; and
> REMANDED.

---

[2]As the district court reasoned, verbal threats by prison guards do not amount to a constitutional violation. See Lynch v. Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987).