**REVISED OCTOBER 8, 2013**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2013

Lyle W. Cayce
Clerk

No. 12-40695

JAMES MCCREARY

Plaintiff-Appellant

v.

JEFFERY RICHARDSON, Captain

Defendant-Appellee

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:11-cv-00559-MHS-JDL

---

Before JONES and CLEMENT, Circuit Judges, and KAZEN[*], District Judge.

PER CURIAM:[**]

James McCreary, Texas prisoner #1370831, appeals *pro se* the district court's dismissal of his lawsuit against Captain Jeffrey Richardson of the Texas Department of Criminal Justice ("TDCJ"). For the following reasons we AFFIRM.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40695

**FACTS AND PROCEEDINGS**

On May 13, 2011, McCreary and over a hundred other Muslim prisoners were standing in the hallway of the H. H. Coffield Unit waiting to attend a Jumu'ah service. Jumu'ah is an obligatory day of assembly for Muslims. Captain Richardson, who had been sitting at a nearby desk, reportedly approached McCreary and stated that he "wish[ed] he could shut [the] service down." McCreary asked Richardson why "he always single[d] out the Muslims['] services subjecting [the Muslims] to harassment." Richardson then became "irate," used abusive language, and threatened to send McCreary to lock-up and to strip search him. When Richardson asked McCreary if McCreary had a problem with Richardson's behavior, McCreary responded "yes," and asked Richardson, "What have we done to make you mistreat the [M]uslims every time when we have our services?" Richardson then ordered a strip search of McCreary.

McCreary objected to the search, informing Richardson that his religion did not allow him to be naked in front of females other than his wife. Richardson nevertheless conducted the search in the hallway in front of female officers and staff. McCreary repeated that the strip search was a violation of his beliefs, to which Richardson responded that he "did not care about [McCreary's] belief or [him]." McCreary claimed that Richardson performed the search "for his own personal sexual gratification and homosexual preferences." Richardson also reportedly prevented McCreary from attending the Jumu'ah service after the strip search was completed. The exact time period that McCreary was forced to remain unclothed during the strip search is unclear—but the record indicates that the strip search was a lengthy one. After the strip search concluded, McCreary alleged that he (now clothed) was forced to remain standing in a

No. 12-40695

corner of the hallway until another guard instructed McCreary to return to his cell block.

McCreary filed a complaint against Richardson in his individual capacity, alleging that Richardson conducted an unconstitutional strip search. McCreary also alleged that Richardson improperly prevented McCreary from attending religious services in violation of the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), the First, Fourth, and Fourteenth Amendments, Texas state law, and 42 U.S.C. §§ 1981, 1986, and 1988.

After a *Spears* hearing, *see Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), McCreary moved for limited discovery to obtain various TDCJ policy documents regarding strip searches, including documents describing when and where strip searches could be conducted. The Magistrate Judge granted McCreary's request and directed Richardson to specify whether the search was conducted pursuant to a specific order or policy—and if so, to produce such order or policy—or upon his belief that there was reasonable cause to conduct the search. Richardson responded that the search was conducted based on his belief that there was reasonable cause, and did not turn over any additional documents.

McCreary filed a motion for a default judgment or, in the alternative, an "order to disclose" additional TDCJ orders and policies regarding strip searches. McCreary contended that the district court had ordered Richardson to produce a copy of the orders or policies, and that he had failed to do so. Richardson responded that he had complied with the Magistrate Judge's order, but agreed to produce a copy of the TDCJ administrative directive authorizing strip searches upon a supervisor's belief that there is reasonable cause. The Magistrate Judge found that Richardson acted in compliance with the court order, and recommended that the district court deny McCreary's request for a

3

default judgment or any further discovery.  The district court adopted the Magistrate Judge's report over McCreary's objections, and denied the motion.

Richardson moved for summary judgment asserting that McCreary's claims were without merit and that he was entitled to qualified immunity.  The Magistrate Judge found that: (1) McCreary had no standing to pursue injunctive relief because Richardson was no longer employed at the Coffield Unit; (2) McCreary did not have a claim for damages under RLUIPA; and (3) Richardson was entitled to qualified immunity under 42 U.S.C. § 1983 because McCreary had not shown that Richardson's actions were objectively unreasonable in light of clearly established law at the time of the incident.  The district court adopted the Magistrate Judge's report, granted Richardson's motion for summary judgment, dismissed McCreary's federal claims with prejudice, and dismissed his supplemental state claims without prejudice.  McCreary filed a timely notice of appeal, challenging both the denial of default judgment and the dismissal of his lawsuit.

## STANDARD OF REVIEW

Discovery rulings are "committed to the sound discretion of the trial court" and will not be reversed on appeal unless "arbitrary or clearly unreasonable." *Williamson v. USDA*, 815 F.2d 368, 373, 382 (5th Cir. 1987).  Summary judgment rulings are reviewed de novo, with all facts and inferences construed in the light most favorable to the nonmoving party.  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  A movant is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

## DISCUSSION

### A.   Discovery Motions

The district court did not abuse its discretion in denying McCreary's motion for a default judgment, or, in the alternative, to compel discovery.

Although the Magistrate Judge granted McCreary's motion for limited discovery, Richardson complied with the court's order in full and was under no obligation to produce additional documents. Furthermore, because Richardson admitted that the search was conducted based on his personal belief that reasonable cause existed, the orders and policies sought by McCreary were not relevant to Richardson's motion for summary judgment or the issue of his qualified immunity. McCreary has "failed to show that discovery was necessary to establish any issue of material fact that would preclude summary judgment," and the district court's discovery rulings will not be disturbed. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

## B.    Summary Judgment

McCreary does not have standing to pursue injunctive relief because Richardson is without authority to redress his injuries. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (internal alterations omitted))). Richardson is no longer employed at the Coffield Unit and does not have the duty or ability to affect the conditions of McCreary's incarceration there. Because Richardson does not have the "power[] to redress the injuries alleged," McCreary's request for injunctive relief was properly dismissed. *Okpalobi*, 244 F.3d at 427.

McCreary has abandoned his claims under 42 U.S.C. §§ 1981, 1986, and 1988 by failing to raise them on appeal. Although *pro se* briefs are afforded liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), even *pro se* litigants must brief arguments in order to preserve them. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). We consider only whether McCreary is entitled

to monetary relief under RLUIPA or monetary relief under 42 U.S.C. § 1983 for violations of his First, Fourth, or Fourteenth Amendment rights.

### i.     RLUIPA

An inmate is not entitled to monetary damages under RLUIPA for a suit brought against a correctional officer in his individual capacity.  *Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 328 (5th Cir. 2009), *aff'd sub nom Sossamon v. Texas*, 131 S. Ct. 1651 (2011).  Accordingly, McCreary's RLUIPA claims were properly dismissed.

### ii.     42 U.S.C. § 1983

Prior to considering whether McCreary can succeed on his claims under § 1983, we must consider whether Richardson was entitled to qualified immunity.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."  *Id.* (internal quotations marks omitted).  Once a defendant invokes qualified immunity, as Richardson has done here, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

In determining if a defendant is entitled to qualified immunity, this court evaluates whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Pearson*, 555 U.S. at 232 (citing

*Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011). This court may consider these prongs in any order. *Pearson*, 555 U.S. at 236.

When applying the second prong of this test, we examine whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (internal alterations and quotation marks omitted). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation marks and footnote omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Further, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," because a "general proposition . . . is of little help in determining whether the violative nature of particular conduct is clearly established." *Id*. at 2084. As this court has noted, an official:

> does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

Even though there are many aspects of McCreary's account that, if true, are troubling, McCreary has not satisfied his burden of showing every

reasonable official would have understood that what Richardson did was in derogation of clearly established constitutional law.

1. Fourth Amendment Claims

Prison practices that impinge on prisoners' constitutional rights are valid as long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). Strip searches have been repeatedly recognized as an important tool of prison security, and are not *per se* unconstitutional. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1515-23 (2012); *Bell*, 441 U.S. at 558-60. A prisoner retains, "at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). When reviewing the reasonableness of searches, this court strikes a balance "in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner." *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994) (internal quotation marks omitted). We "defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence*, 132 S. Ct. at 1513-14. Finally, for the purposes of Fourth Amendment analysis, we review the objective reasonableness of conducting a search, and not the officer's

No. 12-40695

subjective intent.  *See, e.g.*, *al-Kidd*, 131 S. Ct. at 2082-83; *Whren v. United States*, 517 U.S. 806, 812 (1996).

Because we construe *pro se* briefs liberally, we interpret McCreary's brief as challenging both the justification and the conduct of his strip search.

(a) Justification

Though it is "clearly established in the abstract," *Kinney*, 367 F.3d at 350, that a prison official must have a reasonable justification for strip searching a prisoner, on the specific question that matters for the qualified immunity analysis here—whether a justification has been considered sufficient under our previous case law—our case law has not "placed the statutory or constitutional question beyond debate" such that "every reasonable official would have understood" that McCreary's strip search was unconstitutional.  For example, in *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992), we approved of publicly strip searching prisoners who created "organized disturbance[s]".  *Id.* at 510. There is no sufficiently clear legal difference relevant to the Fourth Amendment qualified immunity analysis between a food fight and the potentially provocative barbed words at issue here.  A potential disturbance creating a security risk is a potential disturbance creating a security risk regardless of whether it is created through potentially inflammatory statements in a hallway full of a hundred prisoners or flying food.

The partial dissent criticizes this determination in light of McCreary's allegations, but the partial dissent's analysis conflates disputed facts with disputed material facts.  McCreary and Richardson may have differing accounts of the events that resulted in McCreary's strip search and Richardson's motive

in conducting the strip search, but summary judgment nonetheless remains appropriate because none of the relevant factual disputes between the parties affects the ultimate legal determination that Richardson is entitled to qualified immunity on Fourth Amendment claims. The partial dissent makes much of Richardson's alleged motive for conducting the strip search, but Richardson's motive does not affect the *Fourth Amendment analysis* because Fourth Amendment compliance is, as a general rule, assessed based on objective reasonableness and not subjective intent. *See, e.g.*, *al-Kidd*, 131 S. Ct. at 2082-83; *Whren*, 517 U.S. at 812.[1]   Both McCreary and Richardson agree that McCreary asked a series of potentially provocative questions in a public hallway about Richardson's behavior.  McCreary's  questions, though understandable given the summary judgment record, nonetheless also constituted a disturbance. Richardson is entitled to qualified immunity because past case law has sanctioned public strip searches of prisoners creating a disturbance.[2] That McCreary's disturbance did not further escalate or turn out to be part of an organized diversion to hide contraband or worse is fortunate[3]—not a reason to

---

[1] The partial dissent's citation of *Cooke v. Nealy,* 166 F.3d 341 (5th Cir. 1998), is not to the contrary—the Fourth Amendment is not mentioned a single time in the *Cooke* opinion because the retaliation claim in *Cooke* arose not out of the Fourth Amendment, but rather the defendant's constitutional right of access to courts and the defendant's constitutional right to file a lawsuit in federal court without retaliation from prison officials.  *Cooke* is accordingly not only irrelevant to the Fourth Amendment qualified immunity analysis, but also factually distinguishable from the present case given that McCreary had not previously filed a complaint against Richardson.

[2] Though the dissent tries to distinguish *Letcher* by cabining the case as a challenge to the presence of females during a strip search, it is a distinction without a difference. If the security justification for a search is sufficient to justify a public strip search in the presence of females, that also necessarily entails a judgment that there was a sufficient justification to strip search the prisoner in the first place.

[3] The dissent argues that this view overly credits Richardson's version of the facts, but McCreary's own opposition to the motion for summary judgment indicates that McCreary's comments had a greater potential for provoking a widespread disruption than suggested by the partial dissent given the traditional sensitivities surrounding Jumu'ah. "[I]n the past"

deny qualified immunity. To the extent that the cases cited by the partial dissent suggest otherwise—and we do not believe they do[4]—they do not alter the result of the qualified immunity analysis because we do not subject officials to monetary liability for "picking the losing side" when there is divergent case law. *Morgan*, 659 F.3d at 372 (internal quotation marks omitted). We do not require governmental officials to be clairvoyant when federal judges disagree as to the law.

Finally, McCreary's arguments that Richardson's search violated TDCJ rules do not materially alter the qualified immunity analysis with respect to the justification for the strip search. Even assuming that McCreary is correct that the search violated TDCJ rules (a difficult determination given the present state of the record), Richardson's compliance with TDCJ rules does not alter the constitutional analysis because TDCJ rules do not set the outer constitutional limits on strip searches. *See, e.g.*, *Virginia v. Moore,* 553 U.S. 164, 176 (2008) ("[S]tate restrictions do not alter the Fourth Amendment's protections."). McCreary's remedy for violations of TDCJ rules that do not also violate clearly established constitutional law is not a § 1983 suit, but rather lies with the prison grievance procedures and any state law remedies he may have.

---

noted McCreary, "it was [almost] certain to cause a massive physical confrontation to stop a Muslim from attending [Jumu'ah], require him to get naked in front of a female, or for a guard to even touch a Qur'an."

[4] The closest cases that the dissent cites are *Waddleton v. Jackson*, 445 F. App'x 808 (5th Cir. 2011) and *Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999). But *Waddleton,* given its procedural posture, does not address questions of qualified immunity, and is, in any case, distinguishable on its facts. The plaintiff in *Waddleton v. Jackson* did not create any sort of disturbance, but rather was inside the chow hall when a disturbance happened outside the quickly sealed-off chow hall. *See Waddleton v. Jackson*, No. C-10-267, 2010 WL 5443818 (S.D. Tex. Nov. 10, 2010). And because *Moore* dealt with a post-*Spears* hearing dismissal, all it determined was that the plaintiff's claim was not frivolous. *See Moore*, 168 F.3d at 235-36. As such, *Moore*'s indication that a strip search was *not clearly lawful* is of little help to McCreary in demonstrating that every reasonable officer would have known that the search was *clearly unlawful*.

(b) Conduct

McCreary's brief alleges that the strip search was unconstitutional both because of its length and the fact that it was conducted publicly (with females present).

Strip searches have been upheld as constitutional even when conducted in non-private areas in the presence of non-essential personnel, *see Elliot*, 38 F.3d at 190-92, or on male prisoners in the presence of female officers, *see Letcher*, 968 F.2d at 510; *Tasby v. Lynaugh*, 123 F. App'x 614, 615 (5th Cir. 2005). Given the present case law in this circuit, we are not prepared to say that a reasonable officer would believe that a public strip search conducted by a male officer on a male offender in the presence of females after an equally public disruption was contrary to clearly established law. Precedent does not clearly establish that a reasonable officer could not perform the strip search in the most efficient manner possible without abandoning his post—the location where the incident occurred. *See Elliot*, 38 F.3d at 191-92. Richardson accordingly deserves qualified immunity relating to Fourth Amendment claims concerning the public nature of the strip search.

The length of McCreary's search gives us pause, but current law does not indicate that the search was clearly unlawful. Before addressing whether the search was clearly unlawful, however, we need to determine what precisely McCreary's allegations are. McCreary's pleadings and testimony confirm that first, he underwent a lengthy strip search, second, got dressed after the strip search concluded, and then third, was forced to continue standing in the corner after Richardson left and another guard came by to tell Richardson to leave. McCreary's complaint—which is potentially binding at trial and at the very least constitutes evidence against McCreary should he try to contradict his

No. 12-40695

pleadings[5]—indicates that McCreary "was dressed" when he was forced to stand in the corner after the strip search. McCreary's testimony during the *Spears* hearing when he actually set out the exact chronology of events likewise confirms that he was permitted to get dressed after the incident:

The Court: So why did it take so long, if you're the only guy, they just made you stand there for thirty minutes, naked?

McCreary: No. I was in the hallway thirty minutes naked.

The Court: Okay, but they just made you stand there for thirty minutes . . . ?

McCreary: He did

The Court: What?

McCreary: Nah, he did, he had me, during the time he was searching my clothes he taking his time. . . . So he is sitting there the whole time this is how long it took him to strip search me. . . . . as he's searching my clothes when he finished searching he'd throw them like a foot or two away from him every direction, behind him. . . . So when I go to get my stuff, I gather my stuff, about to put my boxers on, he said "I ain't tell you to get dressed." So now he's telling me to go through the routine, lift my nuts, show my tongue, my ears, the cavity search process. So I do this in the middle of the hallway.

---

[5] This circuit has long noted that factual statements in the pleadings constitute binding judicial admissions, *see, e.g.*, *Johnson v. Houston's Restaurant, Inc.*, 167 F. App'x 393, 395 (5th Cir. 2006); *Morales v. Dep't of the Army*, 947 F.2d 766, 769 (5th Cir. 1991); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107 (5th Cir. 1987), or at the very least adverse evidentiary admissions, *see, e.g.*, *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

No. 12-40695

The Court: So this is . . . Captain Richardson doing this?

McCreary: Yes, sir.

The Court: Now . . . tell me again what he was saying before he told you to . . . strip so he could search you? . . . . What did he say? . . .

McCreary: . . . He tell me to get naked. . . . I get naked . . . after I was standing there naked, this is when he was going slow doing his search . . . . *After the strip search I get dressed, he tell me to stand in the corner.* I stand in the corner. Miss Gibson came, Lieutenant Gibson came, and told me to leave . . . .

(emphasis added).

Accordingly, we must determine whether it was clearly unlawful for Richardson to conduct a lengthy strip search, after which the prisoner is permitted to get dressed and told to stand in the corner. We believe that the length of the strip search was not clearly unlawful.  That McCreary was permitted to get dressed after the strip search concluded forecloses potential arguments that McCreary may have been able to raise had he been forced to remain unclothed once the search had concluded.  We are not aware of any precise clearly established constitutional rule limiting the maximum time that a strip search can take, or further if such a constitutional countdown timer on strip searches even exists in the first place. *Cf. Florence*, 132 S. Ct. at 1514-15 (describing extended strip-search/shower procedure upheld as constitutional by the Supreme Court); *Delmast v. Cardenas*, No. 4:09cv629, 2011 WL 4591938, at *11, *17 (E.D. Tex. Sept. 1, 2011) (determining that qualified immunity was proper under the first prong of the qualified immunity test after a half-hour strip search), *appeal denied sub nom.*, *Delmast v. Hudson*, 497 F. App'x 424 (5th Cir.

14

No. 12-40695

2012). As every reasonable officer would not know that a lengthy strip search was clearly unlawful, Richardson is entitled to qualified immunity from claims related to the length of the strip search.

2. First Amendment Claims

Although prisoners must be provided reasonable opportunities under the First Amendment to exercise their religious beliefs, *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam), prison officials may place appropriate limits on the religious rights that are afforded to inmates consistent with the First Amendment. *Estate of Shabazz*, 482 U.S. at 348. Because McCreary was given other opportunities to exercise his beliefs, the fact that McCreary's religious beliefs may have been impacted by the search does not render Richardson's otherwise valid strip search objectively unreasonable under the First Amendment. *See id.* at 351-52.

For similar reasons, Richardson did not act in an objectively unreasonable manner by refusing to permit McCreary to attend his Jumu'ah service after the search because McCreary had opportunities to "participate in other religious observances" of his faith. *Id.* at 352; *see also id.* at 351 (noting that "the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service"); *Mumin v. Phelps*, 857 F.2d 1055, 1056-58 (5th Cir. 1988).

3. Due Process Claims

Finally, McCreary has not alleged sufficient facts showing that the strip search imposed hardships atypical of ordinary prison life, and has further failed to show a liberty interest protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Richardson is entitled to qualified immunity and summary judgment on all of McCreary's § 1983 claims.

*iii. State law claims*

A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992). When a district court exercises its discretion to dismiss state law claims, it must do so without prejudice so that the plaintiff may refile in the appropriate state court. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). The district court did so, and McCreary has not shown any error in connection with the dismissal of these claims.

## CONCLUSION

We AFFIRM the district court's dismissal of McCreary's lawsuit.

No. 12-40695

KAZEN, District Judge, concurring in part and dissenting in part.

Although I concur in most of the majority opinion, I respectfully dissent from the decision to grant Captain Richardson qualified immunity on McCreary's Fourth Amendment claim. Reading the factual record in the light most favorable to McCreary, I believe he has sufficiently demonstrated a genuine issue of material fact regarding whether the public strip search was justified. Thus, summary judgment was improper. I would reverse and remand for further proceedings on that claim only.

## I.

## A.

Starting with the second step of the qualified immunity inquiry, the majority concludes that Captain Richardson did not act in an objectively unreasonable manner in conducting a public strip search because he was responding to "potentially inflammatory statements in a hallway full of a hundred prisoners." Thus, the majority finds that the strip search was a justified response to a "disturbance" created by McCreary. I disagree with that conclusion because it unduly credits Captain Richardson's sparse and contradictory version of events in analyzing whether he violated clearly established law.

In conducting the second step of the qualified immunity inquiry on summary judgment, we are to determine the issue of clearly established law under *the plaintiff's* version of events. *See*, *e.g.*, *Ramirez v. Martinez*, 716 F.3d 369, 378-79 (5th Cir. 2013). McCreary furnished a detailed retelling of the incident with Captain Richardson, much of which is contained in the majority opinion.

No. 12-40695

By contrast, in response to McCreary's initial administrative grievance in the prison, Richardson supposedly reported that McCreary became "disruptive" during his "opportunity to go to his religious service." That response mentioned nothing about a strip search, but rather stated that McCreary was sent back to his assigned housing and could return when he "decided to follow orders." The response concluded: "No further action warranted." Curiously, this information did not come directly from Richardson. Instead, as noted in the Magistrate Judge's Report and Recommendation, it came in a response signed by Warden Wisener who purportedly received the information from Richardson. The only other input allegedly from Richardson, but signed only by his state attorneys, came in an "Advisory to the Court." This was described as a response to an order from the Magistrate Judge requiring Richardson to specify whether the strip search of McCreary "was the product of a specific unit post order, unit departmental policy or upon belief of a supervisor that there was reasonable cause to warrant such a search." (R. at 69.) The Advisory cited a prison rule, AD 3.22, that "allows a supervisor, such as [Richardson], to call for a strip search when he or she believes there was reasonable cause for such," but provides no explanation of what constituted reasonable cause (nor is rule AD 3.22 in the record). Notably, Captain Richardson never submitted any personal affidavit or testimony to support his version of the incident.[1]

On the record before us, the only "disruption" by McCreary was two questions posed early in the encounter that requested the reasons for Captain

---

[1] Admittedly, McCreary also did not submit supporting affidavits. However, he testified to his version of the incident at the *Spears* hearing (for which Richardson appears not to have been present). (*See* R. at 147-48.) Furthermore, McCreary was representing himself *pro se* and, as a prisoner, he is severely limited in his ability to interview witnesses, obtain affidavits, or otherwise investigate his claim. Captain Richardson is not so limited.

No. 12-40695

Richardson's mistreatment and general dislike of Muslims. I do not think this record supports a safety purpose for the strip search. Since Captain Richardson is virtually silent in this record, there is no evidence that McCreary acted in a threatening manner, had been tagged as a high-risk prisoner, or otherwise posed a security threat. Notably, there is also no evidence that McCreary attempted to incite misbehavior by the other prisoners in the hall nor that any disruption occurred.

**B.**

It is clearly established that a prison official, like Captain Richardson, must have reasonable justification for initiating a strip search. *See Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999) (citing *Bell v. Wolfish*, 99 S.Ct. 1861, 1884 (1979)). It is true that we give substantial deference to prison strip searches when they are based on legitimate penological interests or institutional safety requirements. *See Moore*, 168 F.3d at 236-37; *Watt v. City of Richardson Police Dept.*, 849 F.2d 195, 196 (5th Cir. 1988). But when the search cannot be justified on those grounds, we hold it to be unreasonable. *See Waddleton v. Jackson*, 445 F. App'x 808, 809 (5th Cir. 2011) (unpublished) (applying clearly established law and holding that the plaintiff sufficiently alleged Fourth Amendment violation where there was "no justification, penological or otherwise," for the strip search conducted); *see also Cooke v. Nealy*, No. 97-21035, 1998 WL 912177, at *3 (5th Cir. Dec. 16, 1998) (unpublished) (applying clearly established law and holding that plaintiff's direct evidence of a non-routine, retaliatory strip search was sufficient to state a valid, non-frivolous claim). Here, even giving the requisite deference to a prison official's decision to strip search a prisoner, McCreary has presented credible evidence that an "irate"

19

No. 12-40695

Captain Richardson publicly strip searched him without a "legitimate penological need[]" or meeting any institutional safety requirement. *See Moore*, 168 F.3d at 236-37.

The cases cited by the majority to support a lack of clearly established law are inapposite. Precedent dismissing facial challenges to strip search policies does not govern the reasonableness of a specific application of a prison's strip search policy. *See Watt*, 849 F.2d at 198. Here, McCreary has offered credible evidence of a retaliatory strip search, which is not immunized by a general policy authorizing strip searches. *See Cooke*, 1998 WL 912177, at *3. In addition, neither case relied on by the majority, *Elliot v. Lynn*, 38 F.3d 188 (5th Cir. 1994), and *Letcher v. Turner*, 968 F.2d 508 (5th Cir. 1992), addresses the reasonableness of the *initial justification* for a strip search. In *Lynn*, the prisoner "substantially narrow[ed]" the court's review "by conceding that the scope and justification for the search were not unreasonable." The inmate in *Letcher* challenged only the presence of female prison guards *during* the strip search. 968 F.2d at 510. Here, McCreary expressly contests the initial justification of the search. Moreover, while the majority relies heavily on the supposed parallels between "a food fight [in *Letcher*] and the potentially provocative barbed words at issue here," the disturbance in *Letcher* was more than just "a food fight." The disturbance there was "an organized food throwing incident, in which a number of inmates *threw their food trays, banged on their cell bars, and cursed the guards*," which led to a "lock-down" *Letcher*, 968 F.2d at 509-10 (emphasis added). Here, the only evidence of any "disturbance" was that McCreary asked two questions of Richardson. Unlike in *Letcher*, McCreary did not engage in any abusive behavior toward Richardson. While the majority

20

No. 12-40695

emphasizes that McCreary's questions might have "provok[ed] a disruption," they did not.

## II.

In sum, on the factual record before us and *viewed in the light most favorable to McCreary*, there is a genuine issue of material fact as to Captain Richardson's justification for the strip search and, ultimately, the reasonableness of the search under clearly established law. Summary judgment was, therefore, improper on McCreary's Fourth Amendment claim.

I respectfully dissent.