# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2025

Lyle W. Cayce
Clerk

No. 23-60599

_____

Jacob Blair Scott,

*Plaintiff—Appellant*,

*versus*

Vital Core Strategies; Mike Ezell, *Sheriff, individual and official capacity*; Tyrone Nelson, *Captain, individual and official capacity*; Amanda Harris, *Vital Core, individual and official capacity*; Geneva Drummond, *Deputy, individual and official capacity*; Angie Hand, *Vital Core, individual and official capacity*; John Barnes, *individual and official capacity*; CT Corporation Systems,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:21-CV-189

_____

Before Elrod, *Chief Judge*, and Jones and Stewart, *Circuit Judges*.

Per Curiam:[*]

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 23-60599

Plaintiff-Appellant Jacob Blair Scott was found guilty by a jury for child sex crimes and sentenced to eighty-five years of imprisonment. While awaiting trial, Scott was housed at the Jackson County Adult Detention Center ("JCADC"). Scott brought state law and federal constitutional claims against a third-party medical provider at the JCADC and two of its nurses for providing allegedly deficient medical care. He also brought a myriad of federal claims against four Jackson County officials in their individual and official capacities. Scott's claims lack merit. Accordingly, the judgment of the district court is AFFIRMED.

I.

Scott brought suit under 42 U.S.C. § 1983, advancing claims of constitutional violations by two sets of defendants: (1) the third-party medical provider at the JCADC, VitalCore Health Strategies ("VitalCore"), as well as two of its nurses, Angie Hand and Amanda Harris ("the nurses"), related to their provision of medical care, and (2) four county officials in their individual and official capacities—Sheriff Mike Ezell, Captain Tyrone Nelson, Deputy Geneva Drummond, and Deputy John Barnes—related to their conduct and the conditions at the JCADC. Scott also sued VitalCore and the nurses for medical malpractice and negligence under Mississippi law.

The district court granted the defendants' motions for summary judgment. It dismissed Scott's federal claims against VitalCore and the nurses with prejudice and dismissed Scott's federal claims against the County officials with prejudice. It dismissed Scott's state law claims against VitalCore and the nurses without prejudice.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011) (citation omitted). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the

2

movant is entitled to judgment as a matter of law." *Id.* (citation omitted). "We review evidence in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

## II.

## A.

First, Scott alleges that VitalCore and the nurses provided constitutionally inadequate medical care for his ulcerative colitis and a knee injury. "In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001). To demonstrate deliberate indifference, Scott must show that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates that the official subjectively intended that harm occur." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458–59 (5th Cir. 2001) (citation omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Id.* at 459. And "an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino*, 239 F.3d at 756. Instead, the plaintiff must demonstrate that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an

No. 23-60599

inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Scott received continuous and responsive care from the nurses while at the JCADC and therefore cannot establish that they were deliberately indifferent to his serious medical needs. Scott submitted two medical requests related to his ulcerative colitis, once in March 2020 and once in December 2020. Following each request, tests were conducted, each with normal results, indicating that Scott did not need treatment for ulcerative colitis. Indeed, Scott complained to medical staff in May 2020 that he had not received medication for ulcerative colitis, and he was informed that "all of your bloodwork came back normal and there was no blood found in your stool. Therefore, the medical provider did not order any medicine at this time." Because Scott received medical testing as requested, he cannot establish that the VitalCore nurses were deliberately indifferent to his medical needs. *See Domino*, 239 F.3d at 756; *Banuelos*, 41 F.3d at 235.

As evidence of the nurse's deliberate indifference, Scott points to a 2022 test that indicated he suffers from ulcerative colitis and a related report from a gastroenterologist in 2022 that Scott "has not received what would be considered [the] standard of care for management of chronic inflammatory bowel disease and [is] no longer in remission with evidence of active colitis since incarceration." But a "negligent or even grossly negligent response" that falls below the standard of care does not amount to an Eighth Amendment violation. *Thompson*, 245 F.3d at 459. Indeed, "deliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). Even if the nurses provided sub-standard care because of an incorrect negative diagnosis, Scott cannot establish that the nurses were deliberately indifferent because he received responsive testing following each of his complaints regarding

4

ulcerative colitis indicating further medical care was not necessary. *See Domino*, 239 F.3d at 756.

Further, Scott alleges that the nurses refused to provide him with medications he had been previously prescribed for his ulcerative colitis. The evidence shows, however, that following his indication that he had previously been prescribed medication, medical staff made multiple requests for Scott's relevant medical records. In any event, even if Scott had once been prescribed medication for ulcerative colitis, testing that showed no signs of active ulcerative colitis provided the nurses with no indication that the medication was necessary, and certainly no indication sufficient to establish deliberate indifference. *See Domino*, 239 F.3d at 756.

Second, Scott alleges that the nurses were deliberately indifferent to a knee injury he suffered after he slipped and fell at the JCADC. Scott admits, however, that the injury healed within two weeks, he self-medicated with ibuprofen, and he was permitted to wear a knee brace but rejected the opportunity. A temporary knee injury healed through self-medication, after Scott rejected a course of care offered by personnel, does not constitute a "serious medical need" for purposes of the Eighth Amendment. *Domino*, 239 F.3d at 754 (citation omitted).

Third, Scott's claims against VitalCore fail. As has been noted, none of VitalCore's employees' conduct violated the Eighth Amendment. Even if they had, "Section 1983 does not create supervisory or *respondeat superior* liability." *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Nor does Scott "identify any [VitalCore] policy, practice, or custom" related to his allegations. *Brown v. Megg*, 857 F.3d 287, 289 (5th Cir. 2017) (citation omitted). VitalCore did not violate the Eighth Amendment.

Fourth, Scott's state medical malpractice claims were properly dismissed because of procedural defects. Under Mississippi law, Scott must

have provided at least sixty days written notice to VitalCore and the nurses of his intention to bring suit based on their professional negligence. Miss. Code. Ann. § 15-1-36(15). "No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered." *Id.* This is a substantive, mandatory prerequisite to filing a medical-malpractice lawsuit. *Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927, 929 (Miss. 2006). "[T]he failure to satisfy the presuit-notice requirement mandates dismissal without prejudice." *Fowler v. White*, 85 So. 3d 287, 291 (Miss. 2012) (citation omitted).

Scott provides no competent evidence that he satisfied Mississippi's procedural requirements. Scott points to certified mail receipts showing that some unknown mail was delivered to Gulfport and Pascagoula, Mississippi as well as Austin, Texas. The receipts do not contain recipient names or addresses, nor do they include any substantive information about the mail's content necessary to establish his compliance with Mississippi's notice requirements. Scott also argues that his August 2021 message to JCADC staff through a medical request portal placed VitalCore and the nurses on notice. But that August 2021 message was sent over two months after he filed his complaint in June 2021 and therefore cannot satisfy the pre-suit notice requirement. The district court addressed a "handwritten notice" from February 2021 not raised by Scott in his appellate briefing. But that "notice" did not include, as is required by Mississippi law, "the type of loss sustained, including with specificity the nature of the injuries suffered." Miss. Code. Ann. § 15-1-36(15). And any intimation that VitalCore and the nurses possessed actual knowledge of Scott's intention to sue is insufficient; strict compliance with § 15-1-36(15) is required. *Spann v. Wood*, 269 So. 3d 10, 12 (Miss. 2018).

Scott fails to establish any constitutional violation as to VitalCore or the nurses, and the district court did not err in dismissing his state law claim.

## B.

Scott additionally sued four county officials in their individual and official capacities—Sheriff Mike Ezell, Captain Tyrone Nelson, Deputy Geneva Drummond, and Deputy John Barnes. He claims that the officials violated his constitutional rights because (1) Sheriff Ezell and Captain Nelson contributed to his inadequate medical care; (2) Deputy Drummond refused to give him extra toilet paper; (3) Sheriff Ezell and Captain Nelson failed to provide inmates with disinfectant to sanitize hair clippers; (4) strip searches were not conducted in private; (5) the lights did not turn off at night; and (6) officials interfered with his legal mail and his communication with his attorneys. His claims lack merit.

As a threshold matter, "a suit against a [municipal] official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). Scott's suit against the four County defendants in their official capacity is a suit against the County itself. *See id.* "A municipality is liable under § 1983 only if three requirements are met. First, the municipality must have 'an official policy, practice, or custom' which could subject it to § 1983 liability. Second, the official policy must be linked to the constitutional violation. Finally, the official policy must reflect the municipality's deliberate indifference to that injury." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (citations omitted).

Scott's briefing does not identify any municipal policy, practice, or custom linked to a constitutional violation. In his opposition to the defendant's motion for summary judgment in the district court, Scott argued only that "[t]he unlawful government action was part of the public entity's

policy or custom, and a connection existed between the specific policy or custom and the violations of Plaintiff." That conclusory and unsupported statement is insufficient to establish any official policy, practice, or custom of Jackson County related to any constitutional violation. *See Lawson*, 286 F.3d at 263; *Carnaby*, 636 F.3d at 187.

For the same reason, to the extent Scott generally alleges claims against Mike Ezell, the Sheriff of Jackson County, and Tyrone Nelson, the Director of the JCADC, in their capacity as supervisors, his claims fail. Scott provides evidence of neither an unconstitutional failure by the defendants to adopt a specific policy, nor evidence of a failure to supervise or train subordinates. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Scott makes six additional claims against the County defendants in their individual capacities.

First, Scott alleges that the County defendants contributed to his inadequate medical care through their actions or inactions, and Sheriff Ezell and Captain Nelson "did not produce any Policy or Procedure that they might claim they adhered to in dealing with my medical needs." Like with the VitalCore defendants, Scott must prove that the County defendants acted with deliberate indifference to his serious medical needs. *Domino*, 239 F.3d at 754. But Scott received constitutionally adequate medical care while at the JCADC from the nurses, and therefore the County defendants could not have "participated directly" in any alleged constitutional violation. Nor are the County defendants liable in their supervisory capacity, because there is no underlying constitutional violation. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018). And Scott's conclusory assertion that "Defendant created a policy or custom which allowed continuance of violations" is not competent evidence sufficient to defeat a motion for summary judgment. *See Carnaby*, 636 F.3d at 187.

8

Second, Scott alleges that he sought more toilet paper due to his ulcerative colitis, but his requests were rejected by Deputy Drummond. He alleges he had to turn to other options besides toilet paper which "caused hemorrhoid irritation and undue pain and humiliation." And he criticizes the lack of "extra toilet paper in such instances as [ulcerative colitis]." Scott received one roll of toilet paper per week, like all inmates, and traded or was given additional toilet paper by other inmates. Even if ulcerative colitis would warrant the provision of additional toilet paper, Scott received the amount consistent with his negative test results. *See Domino*, 239 F.3d at 756. Nor has Scott pointed to any record evidence to suggest he suffered substantial harm from the provision of toilet paper sufficient to establish an Eighth Amendment violation. *See id.* at 754. And the provision of additional toilet paper beyond the weekly allotment does not implicate the "humane conditions of confinement" guaranteed by the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994).

Third, Scott alleges that Sheriff Ezell and Captain Nelson failed to provide inmates with disinfectant to sanitize hair clippers, and as a result Scott contracted Folliculitis. The uncontroverted record evidence shows that "the clippers were provided for the convenience of the inmates, who typically cut their own or each other's hair" and at no time was Scott required to cut his hair. "[T]he Eighth Amendment does not address injury caused by an inmate's voluntary acts." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). Scott's voluntary use of hair clippers does not implicate the Eighth Amendment. And the voluntary use of hair clippers is not an unsanitary condition of confinement implicating the Eighth Amendment. *See Farmer*, 511 U.S. at 832, 114 S. Ct. at 1976; *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

Fourth, the strip searches at the JCADC did not violate the Constitution. Scott alleges that strip searches were conducted in public areas

in view of other inmates, female JCADC personnel, and other JCADC employees. Doing so, he alleges, violated JCADC policy mandating searches "be conducted in a dignified manner." Strip searches carried out in non-secluded areas and in the presence of prison employees of the opposite sex are not unconstitutional, even if they violate the JCADC's internal policies. *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992); *Elliot v. Lynn*, 38 F.3d 188, 190–92 (5th Cir. 1994); *Oliver v. Scott*, 276 F.3d 736, 747 (5th Cir. 2002); *McCreary v. Richardson*, 738 F.3d 651, 658–59 (5th Cir. 2013).

Fifth, lighting issues at the JCADC does not rise to a constitutional violation. After a component part in the lighting system at the JCADC broke, the lights in cells did not dim at night. The JCADC diagnosed the issue and procured and installed a replacement part within six months. Scott alleges, however, that the "problem seemed intentional." Permanent lighting is not a condition "so serious as to deprive prisoners of the minimal civilized measure of life's necessities." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Even if it was, to establish an Eighth Amendment violation, Scott would need to show that prison officials acted with deliberate indifference to his conditions of confinement. *See id.* He does not. The uncontroverted evidence instead shows that the JCADC promptly and conscientiously solved the temporary lighting issue—JCADC contacted four suppliers of the broken part, spoke with the manufacturer of the broken part, and resolved the issue using alternate materials when the relevant part could not be procured. The lighting at the JCADC was not an Eighth Amendment violation.

Sixth, Deputy Barnes and the JCADC staff did not unconstitutionally interfere with Scott's legal mail and attorney communication. Scott alleges his legal mail was opened outside his presence, which negatively impacted his criminal and divorce proceedings, and staff rejected his requests to speak with his attorneys on a non-monitored phone line during the Covid-19 pandemic, violating his right to "free speech" and right to "privacy."

Opening and inspecting legal mail outside Scott's presence is not a violation of his constitutional rights. *See Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) ("[T]he violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights."). Second, Scott testified that, while he was unable to speak with his attorney on a non-monitored phone to prepare for an upcoming trial due to Covid-19, the issue was remedied within two months well before the relevant trial, which was postponed due to Covid-19. Scott's constitutional rights to "privacy" and "free speech" are limited while he is incarcerated. *See United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978), *abrogated on other grounds by Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984) (citation omitted). And to the extent Scott claims that the restriction on attorney communication limited his meaningful access to the courts, he has failed to establish that he suffered an actual injury or was prejudiced as a result. *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2179 (1996). Scott testified that the situation was "rectified," and his trial was postponed, giving him ample opportunity to meet with his attorneys.

Scott further alleges that he never received some mail sent by his mother and that some of his legal mail was "turned over to the District Attorney's Office." This unsubstantiated claim is not competent evidence for purposes of a motion for summary judgment. *See Carnaby*, 636 F.3d at 187.

Scott fails to establish any constitutional violation committed by the County defendants.

## C.

Finally, Scott argues that the district court erred in granting the defendants' motion for summary judgment without permitting him to

complete discovery.  The district court did not err.  The district court's decision to preclude further discovery is reviewed for an abuse of discretion. *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993).

On November 7, 2022, the district court established a discovery deadline of December 7, 2022.  On November 23, 2022, Scott moved the district court to issue subpoenas to the JCADC and VitalCore, seeking the production of fourteen categories of documents and evidence.  On December 5, 2022, the district court denied Scott's request without prejudice, instructing him to propound discovery requests to those parties under Federal Rules of Civil Procedure 34 and 36, and extended the discovery deadline to February 7, 2023.  Scott then sought to issue subpoenas to the JCADC and several non-parties.  The subpoenas to the JCADC were quashed because the JCADC was a party to the lawsuit and the district court concluded that the proper mechanism to procure discovery information was under Federal Rules of Civil Procedure 26 and 34.  During this time, Scott propounded interrogatories, but did not make any additional discovery requests.  One day before the discovery deadline, on February 6, VitalCore moved to compel Scott to execute and return a HIPAA authorization that had been requested numerous times from him.  On February 8, the district court ordered Scott to do so and established a final discovery deadline of April 10, 2023.  The deadline for all dispositive motions was also set for May 1, 2023.  The parties were warned that "the Court [would] not grant any more extensions of the discovery period absent a showing of good cause," and that "discovery requests must be propounded sufficiently in advance of the discovery deadline so that all responses will be due . . . by the discovery deadline."

On March 21, 2023, only three weeks before the discovery period was set to expire, Scott filed a "Notice of Service of Request for Production" addressed to the Jackson County Board of Supervisors.  VitalCore and the

nurses received Scott's request by mail on April 21, 2023, nearly two weeks after the discovery period ended. The district court granted defendants' joint request to strike Scott's request as untimely and denied Scott's motion to compel defendants to produce the requested documents.

On appeal, Scott argues that he did not receive mail regarding the proper method to seek discovery until three weeks before the deadline because he moved multiple times between facilities and that his untimely discovery request should be excused because of his allegedly good faith efforts to comply with the Rules. "A litigant's pro se status" does not excuse "him for lack of knowledge of the Rules of Civil Procedure." *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013). Scott had ample time from before the original discovery deadline of December 7, 2022, to the final deadline of April 10, 2023, to make any discovery requests in a proper and timely fashion. The district court did not abuse its discretion by cutting off further discovery.

## III.

Scott's federal claims against VitalCore, the nurses, and the County defendants lack merit. His state law claims against VitalCore and the nurses did not satisfy the procedural requirements of Mississippi law. The judgment of the district court is accordingly AFFIRMED.